[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married in New Rochelle, New York on May 23, 1982. They resided continuously in this state for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction.
This is the only marriage for both parties. There are three minor children who are issue of this marriage, Sara Burns born February 19, 1985; Jennifer Burns born May 6, 1987; and Allison Burns born July 2, 1990.
 I
Facts of the Case[1]
Amy and John Burns have known each other for twenty-five years. The plaintiff is a forty-five-year-old administrator in a health care facility operated by members of her family. She is a college graduate with a degree in psychology. Currently she is in good health. The defendant is a forty-seven-year old high school graduate.[2] He trained himself in the art of computer programming, becoming proficient in the field. Although he suffered from depression, the defendant's health was not a significant factor in this proceeding.
At the time of their marriage in 1982, neither individual had any significant assets. Much of what they accumulated came from their earnings throughout the following years. However in 1991, as a result of her mother's death, the plaintiff inherited approximately $385,000, an amount that she received in installments during the following ten years. Some of the money was used as a portion of the down payment on the current marital residence. The rest was used for regular living expenses.[3]
When this couple purchased their first marital home the down payment CT Page 4401 came from savings and from a $9,000 gift from the plaintiff's mother.[4]
Five years later the couple purchased the current marital residence, using a portion of the plaintiff's inheritance for some of the down payment.[5] That home is the only significant marital asset.
Although he had little formal education, for twenty-five years the defendant held a series of positions that required detailed computer expertise. Many of the positions were in New York City where he applied his technical knowledge to the field of commodity trading. His highest annual salary was $110,000. As an example of his work, the defendant developed a foreign exchange application that his corporation used with new subsidiaries.
The plaintiff worked as well, although for a majority of the marriage she earned less than the defendant did. Initially, the plaintiff worked part time outside the home while she provided the primary care for the family's three children. In the latter years of the marriage she became an administrator at the Brandywine nursing home, a facility owned by the plaintiff's family. Consequently, hers was a more secure employment.
The defendant voluntarily left his last position at Brokerage Systems, Inc., in New York City. He complained that he was under excessive stress. He also complained that his employer was engaged in unethical conduct. Furthermore, the defendant desired an early retirement during which he could develop unique commodity accounts. Finally, he claimed that he wanted to spend more time with his children.
When the defendant left his last computer-related position, he spent three years as a day trader. As a result of irresponsible trading, he lost all his severance pay and his entire retirement savings.[6]
Eventually, the defendant secured a position at the Brandywine nursing home. He worked there from July 2000 to May 2002, earning $75,000 annually. Although the defendant was doing a good job at the facility and worked overtime on a regular basis, he failed to complete some required staff evaluations. As a result, the facility administrator, the plaintiff's uncle, deducted $165 from the defendant's pay. Enraged, the defendant resigned immediately. The plaintiff was aware of her uncle's action. Nevertheless, she was furious when her husband quit. She had already filed for divorce.
Fortunately, the plaintiff was able to provide the family's financial support. The plaintiff has a retirement fund worth approximately $20,000. There are some joint savings, monies that the plaintiff segregated from the funds available to the defendant for day trading. Additionally, there is an insurance policy current and available to these CT Page 4402 litigants.
By the time of the dissolution hearing, the defendant had secured a position as a limousine driver for Executive Car Service. There he earns $10 per hour. Although searching in the field of computer technology, he has not secured any positions. He had few interviews.
This marriage has deteriorated over the past six years. Part of the problem was that the defendant could not generate a steady income. As a result, the plaintiff was responsible for both the family financial security and the daily care of her daughters. Although the defendant was at times irresponsible, he also suffered from his lack of employment.[7]
Marriage counseling could not solve their problems.
 II. Orders
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes Section 46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981). The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The parties shall have joint legal custody of the minor children, Sara Burns born February 19, 1985; Jennifer Burns born May 6, 1987; and Allison Burns born July 2, 1990. The primary residence of the children shall be with the plaintiff. The defendant shall have reasonable, flexible and liberal rights of visitation. That contact shall include visits every alternate weekend, from Friday evening at 7:00 to Sunday evening at 5:00. If his weekend visitation is followed by a federal holiday, the plaintiff shall return the children before Monday evening at 5:00.
The defendant shall be solely responsible for the costs associated with the transportation of the children. The defendant shall further be responsible for all physical transportation.
The defendant shall have the option of having the children two separate weeks of uninterrupted time during the summer school vacation and will notify the plaintiff in writing by April 30th of the weeks that he intends to exercise that access.
The parties shall alternate the following legal holidays and school CT Page 4403 vacations with the plaintiff having Schedule A for odd-numbered years and Schedule B for even-numbered years. The sharing of said holidays and school vacations shall supersede the regular visitation schedule. Said holidays shall be designated from 9 a.m. until 7 p.m. unless otherwise agreed by the parties or otherwise designated herein. This schedule may be modified upon agreement of the parties.
 SCHEDULE A
Easter weekend
Spring school vacation
Memorial Day weekend
Christmas vacation until 6:00 p.m. on December 26th.
 SCHEDULE B
Winter school vacation
Independence Day
Labor Day weekend
Thanksgiving weekend
Christmas vacation as of 6:00 p.m. on December 26th until 6:00 p.m. on New Year's Day.
Regardless of the regular access schedule, the plaintiff shall have the children with her every Mother's Day and the defendant shall have the children with him every Father's Day. Said day is designated to be from 9 a.m. until 7 p.m. unless otherwise agreed by the parties.
3. The plaintiff shall provide to or for the benefit of the minor children such medical and dental insurance as may be available through her employment, and the defendant shall reimburse the plaintiff for one-half of the cost thereof. The parties shall each be responsible for one-half of the cost of any uncovered or unreimbursed medical, dental, psychological or therapy expenses as may be reasonably necessary to or for the benefit of the minor child.
4. The plaintiff shall provide to or for the benefit of defendant such medical and dental insurance as may be available through her employment CT Page 4404 for so long as such COBRA be fully responsible for the cost of his uncovered or unreimbursed medical, dental, psychological or therapy expenses.
5. Neither party shall pay alimony to the other, and each party releases the other from any claim thereof.
6. The defendant shall pay to the plaintiff as and for child support the sum of One Hundred and fifty-five ($155.00) dollars per week. The defendant shall continue to pay an amount in accordance with the Child Support Guidelines, until the youngest child, Allison, completes the twelfth grade or attains the age of 19, provided that such child is a full-time high school student and resides with the plaintiff, and if not, then until the youngest minor child of the marriage attains the age of 18.
 7. An immediate wage execution shall enter.
8. For tax purposes the defendant may claim the children as dependents.
9 A. The plaintiff shall have exclusive use and possession of the marital home at 56 Lamplighter Lane in Fairfield, Connecticut, until the sale of the home as hereinafter set forth.
B. During said time, the plaintiff shall be responsible for, and shall indemnify the defendant against, payment of the mortgage, property taxes and insurance and shall be allowed in full any tax deductions therefore.
C. During said time, the plaintiff shall also be responsible for any usual and ordinary maintenance and repair expense; the plaintiff and defendant shall be equally responsible for any capital or other expense in excess of $500.
D. The home shall be listed for sale upon the first of the following events: (1) on July 1st following the youngest child's graduation from high school; (2) the plaintiff's remarriage; (3) the plaintiff's cohabitation with an unrelated adult male; or (4) at the election of the plaintiff.
D. If the parties are unable to agree on a listing price, averaging the suggested listing price of each party's appraiser shall set the price.
E. Any offer within ten (10%) percent of the listing price shall be accepted. CT Page 4405
F. Upon the sale and after payment of the mortgage, broker's fee, attorneys fee and any other usual and customary closing expenses, and after a credit to the plaintiff for all mortgage principal paid on the date of the first mortgage from the date of this judgment to the date of the same, the net proceeds shall be divided seventy (70%) percent to the plaintiff and thirty (30%) percent to the defendant.
G. Each party shall be responsible for any taxable gain in said proportion.
H. The court shall continue to reserve jurisdiction over matters relating to the listing and sale of the property.
I. Neither party shall cause or allow the property to be further encumbered without the consent of the other party.
10. The plaintiff is awarded all of the furniture and furnishings in the marital home, with the exception of the defendant's personal papers and effects, which are awarded to the defendant. Each party shall retain their own personal property.
11. The parties shall be equally responsible for the People's Bank debt listed on their financial affidavit.
12. Except as listed in paragraph 12, each party is responsible for his/her own respective debts.
13. For as long as the defendant shall have a support obligation, he shall cause to have in force and effect his existing life insurance policy, naming the plaintiff as the beneficiary thereof as and for trustee for the minor children. The defendant shall provide to the plaintiff satisfactory evidence thereof within thirty (30) days and at such other times as may be reasonably requested by the plaintiff.
14. This court retains jurisdiction for purposes of entering an educational support order.
15. Each party shall be responsible for his/her own attorneys fees.
16. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
17. Except to the extent more specifically set forth herein, each party CT Page 4406 shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
JULIA DiCOCCO DEWEY, JUDGE